## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ARNO RESOURCES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>EPIC TECH, LLC, FRONTIER SOFTWARE SYSTEMS, LLC, RED ROCK INVESTMENTS, LLC, CRIMSON SKY, LLC, CRIMSON SKY II, LLC, WINTER SKY, LLC, BOB MOSELY, SR., BOB MOSELY, JR., STARITA MOSELY, J. MICHAEL CALDWELL, TIM CALDWELL, and ERIK NORDIN,<br><br>    Defendants. | Civil Action File<br>No.: _____<br><br>**JURY TRIAL<br>DEMANDED** |

## COMPLAINT

Plaintiff Arno Resources, LLC, by and through undersigned counsel, files this Complaint against Defendants Epic Tech, LLC, Frontier Software Systems, LLC, Red Rock Investments, LLC, Crimson Sky, LLC, Crimson Sky II, LLC, and Winter Sky, LLC, Bob Mosely, Sr., Bob Mosely, Jr., Starita Mosely, J. Michael Caldwell, Tim Caldwell, and Erik Nordin (collectively, the "Defendants"), and alleges:

## PARTIES, JURISDICTION AND VENUE

1. Arno Resources, LLC ("Arno Resources" or "Plaintiff"), is a limited liability company existing by virtue of the laws of the State of Texas. Each of its

members is a citizen of the State of Texas.

2.     Defendant Epic Tech, LLC ("Epic Tech"), is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business and a listed registered agent in the State of Georgia.  The registered agent for Epic Tech in Georgia is Corporate Creations Network Inc., 2985 Gordy Parkway, 1st Floor, Marietta, GA  30006.  None of the members of Epic Tech are citizens of the State of Texas.

3.     Defendant Frontier Software Systems, LLC ("Frontier"), is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business, on information and belief, in the State of Georgia.  The registered agent for Frontier is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE  19808.  None of the members of Frontier are citizens of the State of Texas.

4.     Defendant Red Rock Investments, LLC ("Red Rock"), is a limited liability company existing by virtue of the laws of the State of Wyoming that has its principal place of business and a listed registered agent located in the State of Georgia.  The registered agent for Red Rock in Georgia is Mark Mancini, 101 Sable Trace Trail, Acworth, GA  30102.  None of the members of Red Rock are citizens of the State of Texas.

5.      Defendant Crimson Sky, LLC ("Crimson Sky"), is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business and a listed registered agent located in the State of Georgia.  The registered agent for Crimson Sky in Georgia is John D. Shipman, Esq., 999 Peachtree Street, NE, Suite 2300, Atlanta, GA  30309.  None of the members of Crimson Sky are citizens of the State of Texas.

6.      Defendant Crimson Sky II, LLC ("Crimson Sky II"), is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business in the State of Georgia.  Crimson Sky II does not have a registered agent currently listed with the State of Delaware or State of Georgia.  None of the members of Crimson Sky II are citizens of the State of Texas.

7.      Defendant Winter Sky, LLC ("Winter Sky"), is a limited liability company existing by virtue of the laws of the State of Delaware that has its principal place of business and registered agent located in the State of Georgia.  The registered agent for Winter Sky in Georgia is Corporate Creations Network Inc., 2985 Gordy Parkway, 1st Floor, Marietta, GA  30006 and/or John D. Shipman, Esq., 999 Peachtree Street, NE, Suite 2300, Atlanta, GA  30309.  None of the members of Winter Sky are citizens of the State of Texas.

3

8.      Defendant Bob Mosely, Sr. ("Mosely Sr."), is an individual over the age of eighteen who is a citizen of the State of Florida or State of South Carolina, and is otherwise *sui juris.*

9.      Defendant Bob Mosely, Jr. ("Mosely Jr."), is an individual over the age of eighteen who is a citizen of the State of South Carolina, and is otherwise *sui juris.* Upon information and belief, he is a director or officer of Epic Tech, Frontier, Crimson Sky, Crimson Sky II, and Winter Sky.

10.     Defendant Starita Mosely ("S. Mosely") is an individual over the age of eighteen who is a citizen of the State of Florida or State of South Carolina, and is otherwise *sui juris.* She is a director or officer of Red Rock.

11.     Defendant J. Michael Caldwell ("J.M. Caldwell") is an individual over the age of eighteen who is a citizen of the State of South Carolina, and is otherwise *sui juris.* He is also a director or officer of Red Rock.

12.     Defendant Tim Caldwell ("T. Caldwell") is an individual over the age of eighteen who is a citizen of the State of South Carolina, and is otherwise *sui juris.* Upon information and belief, he is a director or officer of Epic Tech, Frontier, Crimson Sky, Crimson Sky II, and Winter Sky.

13.     Defendant Erik Nordin ("Nordin") is an individual over the age of eighteen who, on information and belief, is a citizen of the State of Georgia, and is

otherwise *sui juris*.  Upon information and belief, he is a director or officer of Epic Tech, Frontier, Crimson Sky, Crimson Sky II, and Winter Sky.

14.    This Court has personal jurisdiction over Defendants because each is either a citizen of Georgia; has transacted business within Georgia; has committed a tortious act within the State of Georgia; has conspired with citizens of the State of Georgia and purposefully directed acts in furtherance of that conspiracy to the State of Georgia or caused damage in the State of Georgia as set forth herein; owns, uses or possess real property situated in the State of Georgia; has solicited business, or engaged in any other persistent course of conduct in the State of Georgia; or derives substantial revenue from goods used or consumed or services rendered in the State of Georgia.

15.    This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and the parties are citizens of different states.

16.    Venue is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391 because Defendants, Red Rock, Crimson Sky, Winter Sky and Nordin each reside in this judicial district, because the conduct at issue in this litigation occurred in Northern District of Georgia, Atlanta Division, and because a

substantial part the events of omissions giving rise to the claims occurred in the Northern District of Georgia, Atlanta Division.

## GENERAL ALLEGATIONS

**I.**    ***Agreement Between Customs Game Design, Inc. and Gateway Gaming, Inc.***

17.    Customs Game Design, Inc. ("CGD"), at all times material to this case, was and is a company engaged in computer software engineering, design, applications and back-end source code for gaming software programs comprised of, without limitation, a server, management terminal, and cashier terminal.

18.    Gateway Gaming, Inc. ("Gateway Gaming") is a now-dissolved gaming company that was owned and controlled by Mosley, Sr., and J.M. Caldwell ("Gateway Gaming's Principals"), as well as others.  It was incorporated on or about August 12, 2004.

19.    On or about August 13, 2004, CGD and Gateway Gaming entered into a Development Agreement (the "Development Agreement"), which is attached hereto as Exhibit A.

20.    Under the Development Agreement, CGD agreed to utilize its expertise to create gaming applications in exchange for tiered payments from Gateway Gaming.  These gaming applications would and were in fact used in terminals or game stations in physical locations in Georgia and throughout the United States.

6

These terminals or game stations would present digital promotional games, which individuals would pay to play. These physical game stations would then connect to servers running proprietary software owned exclusively by CGD. This is referred to herein as the "back-end" software.

21.     To allow the games to fully function, Gateway Gaming received a non-transferrable perpetual worldwide license to utilize CGD's proprietary game terminal and back-end software required to operate the promotional gaming applications. The game terminal and "back-end" software included, without limitation:   (a) the central server software that "played" the games, recorded the results, and sent the results to the game terminals, along with other related software that processes and tracked players' monetary transactions; (b) the game terminal that included bill accepter software, card reader software, security software that monitored switches on the game terminal, video software that displayed and animated the related graphic scheme and communications to the central server; (c) management terminal software that would configure the system and generate necessary monetary and usage reports; and (d) cashier terminal software that calculated deposits and payments of monies to users of the software developed by CGD (collectively, the "Software").

22.     The Development Agreement specifically allocated ownership of the intellectual property created under its terms, as set forth under Section 8 of the Development Agreement, which provided as follows:

> **INTELLECTUAL PROPERTY.** The Client shall own the intellectual property rights related to game pay tables, game graphics and the game DLL software. (collectively referred to hereinafter as the "Game Related Pieces"); including all copyrights, trademarks, patents, and documentation for the Game Related Pieces. The Client will also receive a worldwide license to use and modify all source code and documentation for all items exclusive of the Game Related Pieces.

(Ex. A at § 8.)

23.     The Development Agreement thereby conveyed ownership of intellectual property rights, including all copyrights, patents and documentation, related only to: (a) "game pay tables" or pay tables, (b) "graphics," and (c) the "game DLL software," collectively referred to therein as the "Game Related Pieces."

24.     At the same time, CGD retained ownership of any and all other source code and software, including without limitation the Software and, of particular importance here, the software that interfaces with the "game pay tables," "graphics" and/or "game DLL software."

25.     The worldwide license was non-exclusive, non-transferable, and did not authorize Gateway to sub-license, sell or distribute the source code or Software to any third party, without written consent from CGD.  This made clear in Section 8 and, moreover, Section 19 of the Development Agreement:

**ASSIGNMENT.**  This Agreement may not be assigned by either party without the written consent of the other party hereto.

(Ex. A at § 19.)

26.    CGD timely finished creating the promotional gaming applications.

**II.    *Gateway Gaming Indictment and Improper Assignment.***

27.    CGD invested significant money and goodwill to develop, modify and refine the software which was licensed to Gateway Gaming.

28.    From 2004 through 2012, CGD permitted Gateway Gaming to use its worldwide license under the terms of the Development Agreement.

29.    Initially, Gateway Gaming was the only licensee of the system and Software; and CGD transmitted updates as the development progressed pursuant to the terms of the Development Agreement.

30.    As it was permitted to do, CGD also licensed this Software to others in addition to Gateway Gaming in exchange for a percentage of revenue derived from gaming machines.  These third parties would receive an executable system and would not obtain the source code or right to sublicense CGD's Software.

31.    Gateway Gaming was dissolved on January 1, 2013.

32.    In August 2013, Gateway Gaming and Gateway Gaming's Principals were indicted in the United States District Court for the District of South Carolina for money laundering and illegal gambling; to which they pleaded guilty.

33.    Sometime thereafter, Gateway Gaming's Principals caused Gateway Gaming to transfer Gateway Gaming's assets to Red Rock—including the non-transferrable license to use the Software—which then purportedly transferred same to Epic Tech and Frontier.  Red Rocks, Epic Tech, and Frontier, as well as on information and belief Crimson Sky, Crimson Sky II, Winter Sky (collectively, the "Corporate Defendants") are companies owned and controlled by Gateway Gaming's Principals or their family members, including without limitation S. Mosely, T. Caldwell, Mosley, Jr., and Nordin.

34.    The assignments constituted a fraudulent scheme by which Gateway Gaming's Principals could and did continue to profit off of CGD's Software, with the assistance of their family members and close associates, despite being prohibited from assigning Gateway Gaming's license therein.

35.    Despite the foregoing, when referencing the Software in court filings in the United States District Court for the Middle District of North Carolina and in sworn answers to interrogatories, Epic Tech (through Nordin) represented that "in or about 2004," Red Rock "developed a server-based, electronic sweepstakes software system known as 'Legacy' that has been used across the United States where permitted by law," as well as that Epic Tech purchased the Software from Red Rock on or about September 17, 2014.

36.   Red Rock, however, could not have developed the Software; and Red Rock, Epic Tech, and their respective principals knew the foregoing representations to be false when made.

37.   Red Rock was originally named Gateway Systems, LLC.   It was organized under the laws of the State of Delaware on August 6, 2012—eight years after it purportedly developed the Software—then continued its existence as a Wyoming company on January 28, 2013, and changed its name to Red Rock on September 9, 2013.

38.   In reality, Epic Tech, with the other Defendants' substantial assistance, concocted the Software's fictitious origin story in order to pass of the Software as Epic Tech's and thus defrauding the entire market.

39.   Neither Red Rocks nor Epic Tech (and certainly the other Corporate Defendants) could obtain an assignment of any rights under the Development Agreement absent written consent from CGD.   Neither Red Rock nor Epic Tech or the other Corporate Defendants, therefore, obtained any right to Gateway Gaming's "worldwide license to use and modify all source code and documentation" related to the Software or software required to operate the game terminals, including but not limited to the central server, game terminals, management terminals, and cashier terminals, or what Gateway Gaming was calling the "Legacy System."

40.    Nonetheless, upon information and belief, to this day, the Corporate Defendants continue to unlawfully use the Software and source code developed, written and licensed by CGD in the United States and Europe without authorization, without license and without paying CGD any royalty or otherwise compensating CGD for the use of the source code and Software.

41.    Even worse, upon information and belief, the Corporate Defendants are unlawfully themselves licensing the CGD Software and source code to other third parties – for their own financial benefit – without obtaining CGD's consent and without paying CGD any compensation for the continued unlawful use of CGD's proprietary Software.

42.    In doing so, the Corporate Defendants are "passing off" CGD's Software and source code to other third parties as if it is their own intellectual property, thereby causing confusion or misunderstanding as to the source of CGD's Software and source code and representing that such software and source code has characteristics, uses, benefits or quantities that it does not have.  These acts are willfully and knowingly deceptive and constitute material misrepresentations.

III.   *Assignment from CGD to Arno Resources.*

43.    On February 28, 2017, CGD entered into a software assignment agreement with Arno Resources (the "Software Assignment Agreement"), which is attached hereto as Exhibit B.

44.    Pursuant to the Software Assignment Agreement, CGD granted, conveyed and assigned to Arno Resources all rights, title and interest to the intellectual property including those listed in Exhibit A to the Software Assignment Agreement.

45.    This included all intellectual property and associated rights arising in connection with the Development Agreement, which also includes but is not limited to intellectual property and associated rights that were licensed to Gateway Gaming under Section 8 of the Development Agreement, as set forth in Exhibit A thereto:

<u>Exhibit A</u>

Non-Exhaustive List of Purchased Intellectual Property

1.    All trademarks, goodwill associated with the trademarks, trade secrets, copyrights, source code, object code, and other intellectual property that resulted from or are associated with the execution or performance of the August 13, 2004 Development Agreement between Gateway Gaming, LLC and CGD[1], aside from those that Gateway Gaming, LLC may own pursuant to section 8 of the Development Agreement.

2.    All of the intellectual property and associated rights that were licensed to Gateway Gaming, LLC pursuant to section 8 of the August 13, 2004 Development Agreement between Gateway Gaming, LLC and CGD.

(Ex. B at Ex. A.)

13

46.    As the owner of all "intellectual property that resulted from or are associated with the execution or performance of the August 13, 2004 Development Agreement between Gateway gaming, LLC and CGD", Arno Resources is entitled to assert the claims against Epic Tech set forth herein.

IV.    *Discovery of Wrongful Conduct and Statute of Limitations.*

47.    CGD first learned of the aforementioned unlawful conduct in late 2016/early 2017, when one of CGD's clients uncovered materials produced through discovery *by Epic Tech* in *Epic Tech, LLC v. STHR Group, LLC, et al.*, Case No. 1:15-cv-252 (M.D.N.C.), which showed that Epic Tech was using and licensing CGD's source code and proprietary Software under the name the "Legacy System."

48.    The "Legacy System" includes significant portions of code that are identical to CGD's source code and proprietary Software.  In addition, the "Legacy System" includes specific references to CGD, which would not be present absent copying the source code and proprietary software that belonged entirely to CGD and now Arno Resources.

49.    The Corporate Defendants fraudulently concealed the misconduct including by, among other things, willfully concealing and refusing to disclose to CGD or third parties that it and the other Corporate Defendants were unlawfully using CGD's intellectual property, secretly licensing CGD's intellectual property to third

parties while representing that the source code and Software belonged to Epic Tech and its Corporate Defendants, and deriving financial gain from concealing its theft, conversion, fraud and unlawful use of CGD's intellectual property.  Any applicable statute of limitations is therefore tolled.

50.    In addition, as set forth herein, the Corporate Defendants are continuing to wrongfully use Arno Resource's intellectual property without any license or legal right to do so.  Accordingly, the continuing tort doctrine applies and Plaintiff can recover for any and all damages suffered within the applicable limitations periods preceding filing of the instant lawsuit.

51.    All conditions precedent to this action have been waived, performed, or otherwise excused.

52.    Arno Resources has retained the undersigned law firms to represent it in this matter, and has agreed to pay the fees and costs associated therewith.

**COUNT I**
**COMMON LAW UNFAIR COMPETITION**

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

53.    The Corporate Defendants used and continues to use intellectual property owned exclusively by Arno Resources and its predecessor in interest, CGD, including but not limited to Arno Resources' Software or source code pertaining to

the central server, game terminals, management terminals, and cashier terminals without a license or any legal right to use such software or source code.

54.   In addition, upon information and belief, the Corporate Defendants then licensed or otherwise distributed Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the software or source code set forth in Paragraph 40 of this Complaint, to other third parties.

55.   In doing so, the Corporate Defendants further misrepresented to third parties that such intellectual property belonged to, or was otherwise designed, created and/or developed by one or more of them.   In fact, the Corporate Defendants represented that Arno Resources' intellectual property, including but not limited to the Software or source code described herein, constituted their own "Legacy System" software.

56.   These representations were both deceiving and false and, further, constituted passing off, or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another.

57.   The Corporate Defendants deception and misrepresentation by means of "passing off" CGD's source code and software as their own intellectual property (a) caused confusion and misunderstanding as to the source of CGD's software and

source code and (b) misrepresented that the subject source code and software had characteristics, uses, benefits and/or qualities that it did not in fact have.

58.    The Corporate Defendants, and their principals, officers, and directors, engaged in each of these unlawful acts with willful misconduct, malice, fraud, wantonness, oppression and the entire want of care which would raise the presumption of conscious indifference to consequences.

59.    The Corporate Defendants benefited from the unlicensed and unlawful use of Arno Resources' intellectual property, including but not limited to the Software or source code described herein, by obtaining the benefit of unlimited use of Arno Resources' intellectual property without license or legal authority, receiving royalties from third parties after the Corporate Defendants licensed the "Legacy System" and acquiring corporate opportunities, business deals and opportunities to expand its business and revenue, which would not have occurred but their unfair business practices.  The Corporate Defendants further derived unlawful benefits from the skills, expenditures and labor of Arno Resources through its predecessor in interest, CGD.

60.    As a direct and proximate result of the foregoing, Arno Resources has suffered actual and special damages including without limitation, lost licensing fees, lost profits, loss of market share, and loss of goodwill.

61.     Each of the Corporate Defendants' officers and directors, including J.M. Caldwell, Mosely, Jr., S. Mosley, T. Caldwell, and Nordin personally orchestrated, directed, or willfully participated in the aforementioned tortious conduct and accordingly may be held personally liable for these actions, which were not undertaken solely by reason of being members of any of the respective Corporate Defendants.

<div align="center">

**COUNT II**
**UNFAIR COMPETITION UNDER O.C.G.A. § 23-2-55, *et seq.***

</div>

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

62.     The Corporate Defendants used and continued to use intellectual property owned exclusively by Arno Resources and its predecessor in interest, CGD, including but not limited to Arno Resources' Software or source code pertaining to the central server, game terminals, management terminals, and cashier terminals without a license or any legal right to use such software or source code.

63.     In addition, upon information and belief, the Corporate Defendants then licensed or otherwise distributed Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code as described herein, to other third parties.

64.    In doing so, the Corporate Defendants further misrepresented to third parties that such intellectual property belonged to, or was otherwise designed, created and/or developed by one of the Corporate Defendants.   In fact, the Corporate Defendants represented that Arno Resources' intellectual property, including but not limited to the Software or source code described herein, constituted their own "Legacy System" software.

65.    These representations were both deceiving and false and, further, constituted passing off, or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another.

66.    The Corporate Defendants' deception and misrepresentation by means of "passing off" CGD's source code and Software as their own intellectual property (a) caused confusion and misunderstanding as to the source of CGD's software and source code and (b) misrepresented that the subject source code and software had characteristics, uses, benefits and/or qualities that it did not in fact have.

67.    The Corporate Defendants knew that the intellectual property described in herein, including without limitation the Software and its source code, constituted property of Arno Resources and its predecessor in interest, CGD.   Moreover, the Corporate Defendants' actions were knowing and intentional attempts to encroach

upon the business of Arno Resources and its predecessor in interest, CGD and deceiving and misleading the public.

68.   Accordingly, the Corporate Defendants engaged in each of these unlawful acts with willful intent to deceive, willful misconduct, malice, fraud, wantonness, oppression and the entire want of care which would raise the presumption of conscious indifference to consequences.

69.   The Corporate Defendants benefited from the unlicensed and unlawful use of Arno Resources' intellectual property, including but not limited to the Software or source code described herein, by obtaining the benefit of unlimited use of Arno Resources', intellectual property without license or legal authority, receiving royalties from third parties after they licensed the "Legacy System" and acquiring corporate opportunities, business deals and opportunities to expand their business and revenue, which would not have occurred but for their unfair business practices. The Corporate Defendants further derived unlawful benefits from the skills, expenditures and labor of Arno Resources through its predecessor in interest, CGD.

70.   As a direct and proximate result of the foregoing, Arno Resources has suffered actual and special damages including without limitation, lost licensing fees, lost profits, loss of market share, and loss of goodwill.

71.     Each of the Corporate Defendants' officers and directors, including J.M. Caldwell, Mosely, Jr., S. Mosley, T. Caldwell, and Nordin personally orchestrated, directed, or willfully participated in the aforementioned tortious conduct and accordingly may be held personally liable for these actions, which were not undertaken solely by reason of being members of any of the respective Corporate Defendants.

### COUNT III
### UNJUST ENRICHMENT
(Against Only the Corporate Defendants)

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

72.     The Corporate Defendants used and continues to use intellectual property owned exclusively by Arno Resources and its predecessor in interest, CGD, including but not limited to Arno Resources' Software or source code without a license or any legal right to use such Software or source code.

73.     In addition, upon information and belief, the Corporate Defendants then licensed or otherwise distributed Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code as described herein, to other third parties.

74.    In doing so, the Corporate Defendants misrepresented to third parties that such intellectual property belonged to, or was otherwise designed, created and/or developed by the Corporate Defendants represented that Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code described herein, constituted their own "Legacy System" software.

75.    Arno Resources conferred a benefit on the Corporate Defendants as their unlicensed and unlawful use of Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code as described herein, resulted in the Corporate Defendants' unlimited use of Arno Resources' intellectual property without license or legal authority, receiving royalties from third parties the Corporate Defendants licensed the "Legacy System" and acquiring corporate opportunities, business deals and opportunities to expand its business and revenue, which would not have occurred but for the Corporate Defendants' use of Arno Resources' intellectual property.

76.    The Corporate Defendants also acquired the benefit of the skills, expenditures and labor of Arno Resources through its predecessor in interest, CGD, without having to pay for training, research and development, or any of the other

costs incurred by Arno Resources or its predecessor in interest, CGD, in developing such intellectual property.

77.   Accordingly, the Corporate Defendants have obtained the benefit of Arno Resource's goodwill, research and development, source code, Software and other intellectual property by marketing the intellectual property created by Arno Resource's predecessor in interest, CGD, and using such goodwill, research and development, source code, Software and other intellectual property to generate revenue and entice customers.

78.   The Corporate Defendants have provided no compensation to Arno Resources for the value of the product or services conferred by Arno Resources and its predecessor in interest, CGD, on the Corporate Defendants by virtue of Arno Resources' or CGD's unknowing conferral of its goodwill, research and development, source code, Software and other intellectual property on the Corporate Defendants.

79.   The failure of the Corporate Defendants to fairly compensate Arno Resources would result in grave injustice to Arno Resources.

**COUNT IV**
**VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE**
**PRACTICES ACT UNDER O.C.G.A § 10-1-372, *et seq.***

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

80.     The Corporate Defendants engaged in deceptive trade practices when they used intellectual property owned exclusively by Arno Resources and its predecessor in interest, CGD, including but not limited to Arno Resources' Software or source code pertaining to the central server, game terminals, management terminals, and cashier terminals without a license or any legal right to use such Software or source code.

81.     In addition, upon information and belief, the Corporate Defendants then licensed or otherwise distributed Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code described herein, to other third parties.

82.     In doing so, the Corporate Defendants further misrepresented to third parties that such intellectual property belonged to, or was otherwise designed, created and/or developed by the Corporate Defendants.  In fact, the Corporate Defendants represented that Arno Resources' intellectual property, including but not limited to

the software or source code described herein, constituted their own "Legacy System" software.

83.    These representations were both deceiving and false and, further, constituted passing off, or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another.

84.    The Corporate Defendants deception and misrepresentation by means of "passing off" CGD's source code and Software as their own intellectual property (a) caused confusion and misunderstanding as to the source of CGD's Software and source code and (b) misrepresented that the subject source code and software had characteristics, uses, benefits and/or qualities that it did not in fact have.

85.    These actions constituted deceptive trade practices by, among other things:

> (a) Using, distributing and licensing Arno Resources' and its predecessor in interest, CGD's, intellectual property without authorization;

> (b) Passing off Arno Resources' and its predecessor in interest, CGD's, intellectual property as belonging to Epic Tech;

> (c) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Arno Resources' and its predecessor in interest, CGD's, intellectual property;

> (d) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification

of Arno Resources' and its predecessor in interest, CGD's, intellectual property;

(e) Misrepresenting that Arno Resources' and its predecessor in interest, CGD's, intellectual property is of a particular standard, quality, or grade or that goods are of a particular style or model; and

(f) Engaging in conduct which similarly creates a likelihood of confusion or of misunderstanding, to be discovered during the course of litigation.

86.    The Corporate Defendants willfully engaged in each of these deceptive trade practices, with full knowing that its trade practices were deceptive.

87.    In addition, the Corporate Defendants benefited from the unlicensed and unlawful use of Arno Resources' and its predecessor in interest, CGD's, intellectual property, including but not limited to the Software or source code described herein, by obtaining the benefit of unlimited use of Arno Resources' and its predecessor in interest, CGD's, intellectual property without license or legal authority, receiving royalties from third parties after the Corporate Defendants licensed the "Legacy System" and acquiring corporate opportunities, business deals and opportunities to expand its business and revenue, which would not have occurred but the Corporate Defendants' unfair business practices.

88.    As a direct and proximate result of the foregoing, Arno Resources has suffered actual and special damages including without limitation, lost licensing fees, lost profits, loss of market share, and loss of goodwill.

89.    Each of the Corporate Defendants' officers and directors, including J.M. Caldwell, Mosely, Jr., S. Mosley, T. Caldwell, and Nordin personally orchestrated, directed, or willfully participated in the aforementioned tortious conduct and accordingly may be held personally liable for these actions, which were not undertaken solely by reason of being members of any of the respective Corporate Defendants.

90.    In addition, Arno Resources is likely to be damaged by Defendants' deceptive trade practices in the future.

## COUNT V
## CIVIL CONSPIRACY
(Against Only Mosely, Sr., Mosely, Jr., S. Mosely,
J.M. Caldwell, T. Caldwell, and Nordin)

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

91.    When Gateway Gaming's Principals were indicted and Gateway Gaming ceased as a going concern, none of the Defendants should have had the opportunity to use, license, or profit in any manner from the Software; and they did not have the legal right to do so.

92.    Nonetheless, Mosely, Sr., Mosely, Jr., S. Mosely, J.M. Caldwell, T. Caldwell, Nordin (collectively, the "Individual Defendants"), and possibly others, engaged in a conspiracy to unlawfully profit and tortiously deprive Arno Resources of monies to which it was legally entitled by and through the unauthorized use of the Software despite Gateway Gaming's Principals having been indicted and Gateway Gaming ceasing to exist as a going concern.

93.    In furtherance of the conspiracy, the Individual Defendants engaged in numerous overt acts, including but not limited to those set forth in Paragraphs 1 through 53, which are incorporated as though fully alleged herein.  In addition, the Individual Defendants collectively orchestrated and carried out a scheme to create or use various corporate entities—the Corporate Defendants and likely others unknown at this time—and, except for Mosely Sr., were and are officers or directors of such entities.

94.    The conspiracy was and continues to be primarily centered in and through Epic Tech, which has its principal place of business in the State of Georgia, has a listed registered agent in Marietta, Georgia, and which engages in substantial business activities, including those involving passing off the Software of GCD or Arno Resources as its own, throughout the State of Georgia and anywhere else.

95.     Mosely Sr. and J.M. Caldwell controlled Gateway Gaming and caused it to transfer the Source Code to Epic Tech at its principal place of business in Georgia, without the legal right to do so.

96.     Upon information and belief, in conjunction with her husband, Mosely, Sr., S. Mosely and J.M. Caldwell created Red Rock, are Red Rock's sole members, and on information and belief or agreed to be its officers and directors.

97.     They did so in furtherance of the conspiracy in order to be able for the Defendants to falsely claim that Red Rock had developed the Software and then assigned same to Epic Tech.

98.     Mosely Jr., T. Caldwell, and Nordin are, on information and belief, the only members and are the sole officers and directors of Epic Tech, Crimson Sky, Crimson Sky II, and Winter Sky, and most likely other entities through which the Software has been improperly licensed.

99.     The resultant web of companies allowed the Defendants to directly or indirectly profit from the improper use of the Software, as well as to cause confusion in the market, improperly obtain market share that could have otherwise been obtained by CGD, Arno Resources, or their licensees (which would have resulted in additional revenues for CGD or Arno Resources), unfairly and deceptively pass off the Software belonging to GCD or Arno Resources .  These unlawful acts were

purposefully directed to Georgia residents and caused substantial injury to individuals throughout the State of Georgia and anywhere else.

100.   All of these actions occurred when, in fact, Mosely Sr. and J.M. Caldwell controlled Gateway Gaming and used Gateway Gaming to transfer the Software and its source code to Epic Tech at its principal place of business in Georgia.

101.   This conspiracy remains ongoing to this day, as the Individual Defendants use and utilize Epic Tech as the corporate entity through which to further their conspiracy.

102.   As a direct and proximate result of the foregoing, Arno Resources has suffered actual and special damages including without limitation, lost licensing fees, lost profits, loss of market share, and loss of goodwill.

103.   The Individual Defendants, as co-conspirators, are jointly and severally liable.

## COUNT VI
## AIDING AND ABETTING BREACH OF CONTRACT
## ACCOMPANIED BY AN UNLAWFUL AND FRAUDULENT ACT
(Against only Mosely, Sr., Mosely, Jr., S. Mosely,
J.M. Caldwell, T. Caldwell, and Nordin)

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 and 91 through 103 as if set forth fully herein.

104.  The Development Agreement constitutes a valid and binding contract between Gateway Gaming and Arno Resources' predecessor in interest, CGD.

105.  Gateway Gaming breached its Development Agreement with Arno Resources' predecessor in interest, CGD, by sub-licensing the Software to companies it was affiliated with and that were owned or controlled by Gateway Gaming's Principals or their family members including without limitation the Defendants.

106.  Such breach was procured, assisted by and accomplished with the malicious and fraudulent intention of Gateway Gaming, as well as others including without limitation the Defendants, acting without privilege and with knowledge of Gateway Gaming's obligations to CGD, to pass off the Software, its source code, and related intellectual property as the Corporate Defendants'.

107.  Such breach was accompanied, procured and assisted by the fraudulent and malicious acts of Gateway Gaming, the Corporate Defendants, as well as others, passing off the Software, its source code, and related intellectual property as their own.

108.  Each of the Defendants participated in and provided substantial assistance in furtherance of Gateway Gaming's unlawful acts.

109.   As a direct and proximate result of the foregoing, Arno Resources has suffered actual and special damages including without limitation, lost licensing fees, lost profits, loss of market share, and loss of goodwill.

## COUNT VII
## INJUNCTIVE RELIEF

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 as if set forth fully herein.

110.   Arno resources has suffered and, absent injunctive relief, will continue to suffer irreparable injury by the Corporate Defendants' use of the Software and its source code, as well as similar use by the Corporate Defendants' officers, directors, affiliates, subsidiaries, customers, vendors, and other third-parties who obtain the Software or its source code from the Corporate Defendants.

111.   Arno resources has no remedies available to it at law, such as unknown future monetary damages caused by the Corporate Defendants' continued use of the Software and its source code, as well as similar continued use by the Corporate Defendants' officers, directors, affiliates, subsidiaries, customers, vendors, and other third-parties who have or may in the future obtain the Software or its source code from the Corporate Defendants.

112.   Considering the balance of the hardships between Arno Resources and the Defendants, an equitable remedy is warranted.

32

113.   The public interest will not be disserved by a permanent injunction enjoining the Corporate Defendants' continued use of the Software and its source code, as well as similar continued use by the Corporate Defendants' officers, directors, affiliates, subsidiaries, customers, vendors, and other third-parties who have or may in the future obtain the Software or its source code from the Corporate Defendants.

## COUNT VIII
## PUNITIVE DAMAGES

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 and 91 through 103 as if set forth fully herein.

114.   As alleged herein, Defendants violated Georgia common law and O.C.G.A. § 23-2-55, *et seq.*, and Defendants' actions as described in this Complaint showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

115.   Defendants' actions justify the imposition of punitive damages under Georgia law, including under O.C.G.A § 51-12-15.1.

## COUNT IX
## ATTORNEY'S FEES

Arno Resources realleges and incorporates the factual allegations set forth in Paragraphs 1 through 52 and 91 through 103 as if set forth fully herein.

116.   Arno Resources is entitled to recover its costs of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, have been stubbornly litigious, and have caused Arno Resources unnecessary trouble and expense.

117.   Arno Resources is further entitled to recover its costs of litigation, including its attorneys' fees, pursuant to O.C.G.A. § 10-1-373 because Defendants have willfully engaged in the trade practices described in Paragraphs 1 through 52 and 91 through 103, knowing these practices to be deceptive.

## **JURY DEMAND**

118.   Arno Resources requests a jury for any issue so triable.

**WHEREFORE,** Plaintiff, Arno Resources, LLC, demand judgment against the Defendants, jointly and severally, for:

    a.  Actual damages in an amount to be determined at trial;

    b.  Consequential or special damages in an amount to be determined at trial;

    c.  Costs;

    d.  Reasonable attorneys' fees to the extent permissible;

    e.  Punitive damages to the extent permissible;

34

f.   Permanent injunctive relief; and

g.   Such other and further relief as this Court deems just and proper.

Respectfully submitted this 16th day of June 2020.

　　/s/ Ramsey A. Knowles
Ramsey Knowles
Ga. Bar No.: 426726
rknowles@knowlesgallant.com
Jared Hodges
Ga. Bar No.: 225385
jhodges@knowlesgallant.com
*Counsel for Plaintiffs*

KNOWLES GALLANT LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:   (404) 590-3533
Facsimile:   (404) 590-3687

Justin B. Kaplan, Esq.
Florida Bar No. 33725
(*pro hac vice* application forthcoming)

Elaine Kussurelis
Florida Bar No. 1019234
(*pro hac vice* application forthcoming)

**DiFalco Fernandez Kaplan**
777 Brickell Avenue, Suite 630
Miami, Florida 33131
Tel.: 305-569-9800
Fax: 866-569-0666
Jkaplan@dfkfirm.com
elaine@dfkfirm.com

Benjamin H. Brodsky, Esq.
Florida Bar No. 73748
(*pro hac vice application forthcoming*)
Joshua Truppman, Esq.
Florida Bar No. 11795
(*pro hac vice application forthcoming*)

**Brodsky Fotiu-Wojtowicz, PLLC**
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel:  305-503-5054
Fax: 786-749-7644
bbrodsky@bfwlegal.com
joshua@bfwlegal.com
docketing@bfwlegal.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF FONT AND POINT</u>

Counsel hereby certifies that the foregoing has been prepared with one of the

font and point selections approved by the Court in LR 5.1B.

Respectfully submitted this 16th day of June 2020.

<div style="margin-left: 45%;">

/s/ Ramsey A. Knowles
Ramsey A. Knowles
Georgia Bar No.: 426726
rknowles@knowlesgallant.com
*Counsel for Plaintiffs*

</div>

KNOWLES GALLANT LLC
6400 Powers Ferry Road – Suite 350
Atlanta, Georgia 30339
Telephone:   (404) 590-3762
Facsimile:    (404) 590-3687