**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **EPIC TECH, LLC** and | § | |
| **WINTER SKY, LLC** | § | |
| | § | |
| *Plaintiffs*, | § | **Cause No. 20-cv-00577** |
| | § | |
| **v.** | § | |
| | § | |
| **ARNO RESOURCES, LLC** | § | |
| | § | |
| *Defendant.* | § | |

**DECLARATION OF ERIK NORDIN**

     I, Erik Nordin, hereby declare as follows:

     1.     My name is Erik Nordin. I am over 21 years of age. I understand the nature of this oath, and I am otherwise competent to testify to the matters stated in this Declaration. I make this declaration based on my own personal first-hand knowledge and observations.

     2.     I am the Chief Executive Officer of Plaintiff Epic Tech, LLC ("Epic Tech"). I am a custodian of records for Epic Tech. I am familiar with the record-keeping system of Epic Tech, and I am qualified to make the statements contained herein.

     3.     On or about August 13, 2004, Epic Tech's predecessor, Gateway Gaming, LLC ("Gateway"), entered into a Development Agreement with Custom Game Design, Inc. ("CGD"). A true and correct copy of the Development Agreement is attached hereto as Exhibit A-1.

     4.     Though CGD delivered late, and delivered defective software, CGD did complete the Gateway Gaming System and the Gateway Games pursuant to the Development Agreement. As required by the Development Agreement, Gateway paid the full amount of $855,400 on or before December 31, 2005 for the completed Gateway Gaming System and the Gateway Games.

---

**DECLARATION OF ERIK NORDIN – PAGE 1**

5.      On May 22, 2006, CGD filed suit against Gateway and several former CGD employees in a lawsuit captioned Custom Game Design, Inc. v. Gateway Gaming, Inc., Robert Weatherby, David Dempsey, and Keith Riskey, Cause No. 06-04909-K, in the 192nd District Court for Dallas County, Texas (the "Texas Action").

6.      On May 31, 2006, Gateway filed suit against CGD in a lawsuit captioned Gateway Gaming L.L.C. v. Custom Game Design, Inc., Civil Action No. 8:06-cv-01649-HMH, in the United States District Court for the District of South Carolina, Greenville Division (the "South Carolina Action").

7.      Both the Texas Action and the South Carolina Action were predicated on alleged violations of the Development Agreement.

8.      Effective April 25, 2007, all parties to both the Texas Action and the South Carolina Action entered into a Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A-2.

9.      On May 13, 2020, counsel for Arno sent a letter to Epic Tech alleging that Epic Tech had engaged in "unauthorized use of certain software that our client's predecessor in interest, Custom Game Design, Inc., licensed to Gateway Gaming, Inc." [1] A true and correct copy of the May 13, 2020 letter, without its attached draft, is attached as Exhibit A-3.

10.     Frontier Software Systems, LLC, Red Rock Investments, LLC, Crimson Sky, LLC, and Crimson Sky II, LLC are no longer active business organizations. None of these entities are in operation.

11.     Epic Tech and Winter Sky have done business in Texas for years. Epic Tech's and Winter Sky's corporate representatives are willing and ready to engage in discovery in the Western District of Texas if necessary in this dispute.

12.     The exhibits attached hereto are/were kept and maintained in the ordinary course of business. The making of these exhibits is a regular course of business for Epic Tech. The exhibits were made at or near the time of the time of the conducted activity by a person—or from information transmitted by a person—with knowledge of the acts, events, conditions, or opinions recorded therein.

13.     The exhibits attached hereto are true and correct copies of the originals, or exact duplicates of the originals.

14.     I declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2020.


_/s/ Erik Nordin_____
Erik Nordin


Undersigned hereby attests that I have on file a holographic signature corresponding to the signature indicated by a conformed signature (/s/) within this e-filed document.

_/s/ Ethan A. Minshull_____
Ethan A. Minshull
Counsel for Plaintiffs

# EXHIBIT A

# DEVELOPMENT AGREEMENT

This Development Agreement (the "Agreement") is made effective as of the 13th day of August, 2004 (the "Commencement Date") between Gateway Gaming, LLC ("Client") and Custom Game Design, Inc., 1401 N. Central Expressway, Suite 350, Richardson, Texas 75080 ("CGD")

CGD has a background in computer software architecture, design and programming and is willing to provide services to the Client based on this background.

The Client desires to have services provided by CGD.

Therefore, the parties agree as follows:

1.  **DESCRIPTION OF SERVICES.** Beginning on the Commencement Date, CGD will provide the following services, (collectively, the "Services") to Client: manage, plan, architect, design, and code the video gaming systems as described in Exhibit A attached hereto and incorporated hereby.

2.  **PERFORMANCE OF SERVICES.** The manner in which the Services are to be performed and the specific hours to be worked by CGD shall be determined by CGD. CGD will provide such technical support, remote or on-site, as reasonably requested by the Client in accordance with the rate schedule set forth in Exhibit A. If Client directly or indirectly modifies, alters, adds, or in any way changes any software, pay table, or any other component of the video gaming system delivered hereunder to Client by CGD (collectively referred to hereinafter as "Deliverables"), CGD will not be held liable for any resultant damage to the Deliverables.

    CGD warrants and represents that the Services performed for the Client will be CGD's original work and that CGD will not copy the works of others or intentionally infringe the intellectual property rights of any other person or business entity, that CGD has full authority to enter into this Agreement and perform the obligations hereunder, that all designs and products created under this Agreement shall substantially comply with the design requirements as outlined by the Client in this Agreement, and that software developed for the Client will be free from traps or other facilities designed to interrupt normal operation. CGD shall indemnify and hold the Client harmless from any and all claims arising from the intentional infringement of the existing intellectual property rights of others in rendering the Services.

3.  **PAYMENT.** The Client will pay a fee to CGD for Services in accordance with the schedule contained in Exhibit A. Each project will start when the initial payment is received. Subsequent fees will be invoiced at the completion of each milestone. The completion of beta shall be mutually agreed upon in writing by CGD and the Client, and any such mutual agreement may not be unreasonably withheld, delayed or conditioned by either party hereto. If the Client does not respond with a software error within any 30 day period after a project has been delivered for beta, the Client will be invoiced for the applicable milestone and payment will be due. Expenses incurred by CGD in the performance of the Services, as outlined in Section 4, will be invoiced to the Client bi-weekly. Invoices shall be paid to CGD no later than 15 days after the invoice date. Late

charges of 12% per annum will be charged on any outstanding amounts if payment is not received within 15 days of the invoice date.

4. **EXPENSE REIMBURSEMENT.** CGD shall be entitled to timely reimbursement from the Client for the following expenses related to the Services:

- Travel expenses including transportation, lodging, and meals.
- Software specific to the Client's project.
- Hardware specific to the Client's project.
- Any reasonable and necessary expenses.

All expenses must be approved by the Client. Any expenses exceeding $3000 must be approved in writing. These expenses are separate from the software fee described in Exhibit A.

5. **TERMINATION.** This agreement may be terminated by CGD if any payment due from the Client has not been received within 45 days after the invoice date. Client may terminate this agreement at its sole discretion upon death, disability or dissociation of David Hampe from CGD. Except as expressly set forth in the foregoing sentences, this Agreement may be terminated by either party for a material breach hereof if such breach remains uncured by the breaching party for a period of 30 or more days from the date notice of same was delivered, unless the breaching party is diligently pursuing the cure of such breach and cures the same within the successive 30 day period. Termination by CGD will not relieve the Client of payments that are due as of the termination date. If a termination of this Agreement does not occur at a milestone, the Client is responsible for all payments up to and including the milestone currently in progress, in accordance with Section 3 of this Agreement. This Agreement will in any event terminate when all projects set forth in Exhibit A have been completed.

6. **EMPLOYEE SOLICITATION.** If Client (or any related entity thereto or principal thereof) should solicit for contract or hire any employee of CGD or ex-employee of CGD within 180 days after employment by CGD directly or through a third-party, CGD may terminate this Agreement at its sole option and shall be entitled to a payment equal to forty percent (40%) of the annualized salary offered to said employee by the Client.

7. **RELATIONSHIP OF PARTIES.** Nothing herein contained, shall create between the parties hereto, or be relied upon by others as creating, any relationship of employee/employer or partnership, association, joint venture, or otherwise.

8. **INTELLECTUAL PROPERTY.** The Client shall own the intellectual property rights related to game pay tables, game graphics and the game DLL software. (collectively referred to hereinafter as the "Game Related Pieces"); including all copyrights, trademarks, patents, and documentation for the Game Related Pieces. The Client will also receive a worldwide license to use and modify all source code and documentation for all items exclusive of the Game Related Pieces.

As consideration for the above referenced license, Client grants CGD the right to utilize representations of the game screens related to the Game Related Pieces for use in CGD's portfolio in whatever media form CGD deems, and Client authorizes CGD to use Client's name for marketing and promotional purposes as well as for any applicable copyright notices requested by Client.

In consideration of the Client agreeing to engage CGD hereunder, CGD agrees that during the term of this Agreement, it shall not create any Class II gaming device for any third party to be used in North America. CGD also agrees not to develop any Class II software for 90 days after the completion of this contract, with the exception of the Client.

It is anticipated that source code, pay table, flow chart, and complete graphic updates will be provided to Client with each milestone, test release and, at a minimum, no less frequently than 2-week intervals.

9.  **LIABILITY.**  With regard to the Services to be performed by CGD pursuant to the terms of this agreement, CGD shall not be liable to the Client, or to anyone who may claim any right due to any relationship with the Client, for any acts or omissions in the performance of the Services on the part of CGD or on the part of the agents or employees of CGD, except when said acts or omissions of CGD are due to willful misconduct or gross negligence.  The Client shall hold CGD free and harmless from any obligations, costs, claims, judgments, attorneys' fees, and attachments arising from or growing out of the Services rendered to the Client pursuant to the terms of this agreement, or in any way connected with the rendering of the Services except when the same shall arise due to the willful misconduct or gross negligence of CGD and CGD is adjudged to be guilty of willful misconduct or gross negligence by a court of competent jurisdiction.

Neither party shall be liable hereunder for special, indirect, consequential or incidental losses or damages of any kind or nature whatsoever, including but not limited to lost profits or lost savings, regardless of whether arising from breach of contract, warranty, tort, strict liability or otherwise, even if advised of the possibility of such loss or damage, or if such loss or damage could have been reasonably foreseen.

The Client's liability hereunder shall not exceed the total amount paid for the Services listed on Exhibit A under which such liability arises.  CGD's liability hereunder shall not exceed the total amount earned under this Agreement as listed on Exhibit A under which such liability arises.  A party's liability shall not be so limited with respect to injuries to persons or damage to tangible property arising out of the gross negligence or willful misconduct of such party or its employees.

10.  **CONFIDENTIALITY.**  Confidential information is information that relates to the other party's research, development, trade secrets, or business affairs, but does not include information which is generally known to the public or easily ascertainable by nonparties of ordinary skill in computer design and programming.

Notwithstanding the rights granted by Client to CGD in Section 8 above, CGD and the Client hereby acknowledge that during the performance of this Agreement, they may learn or receive confidential information related to the other party and therefore CGD and Client hereby confirm that all such information relating to the other party will be kept confidential. CGD reserves the right to divulge such information to support staff or associates to the extent necessary to enable CGD to perform the Services.

11.    **CONFIDENTIALITY AND WARRANTY AFTER TERMINTION.** The confidentiality and warranty provisions of this Agreement shall remain in full force and effect after the termination of this Agreement.

12.    **RETURN OF RECORDS.** Upon completion or termination of this Agreement, CGD shall coordinate with Client regarding the return and/or destruction of all records, notes, data, memoranda, models, and equipment of any nature that are in CGD's possession or under CGD's control and that are the Client's property or relate to the Game Related Pieces.

13.    **NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage prepaid, addressed as follows:

**If for the Client:**
Gateway Gaming, LLC
Leslie Caldwell
103 Green Crest Way
Easley, SC 29642

**If for CGD:**
Custom Game Design, Inc.
David Hampe
1401 N. Central Expressway
Suite 350
Richardson, Texas 75080

Such address may be changed from time to time by either party by providing written notice to the other in the manner set forth above.

14.    **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

15.    **AMENDMENT.** This Agreement may be modified or amended if the amendment is made in writing and is signed by both parties.

16.    **SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or

unenforceable, but that by limiting such provision it would become valid and enforceable then such provision shall be deemed to be written, construed, and enforced as so limited.

17. **WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

18. **APPLICABLE LAW.** This Agreement shall be governed by the Laws of the State of South Carolina

19. **ASSIGNMENT.** This Agreement may not be assigned by either party without the written consent of the other party hereto.

20. **WARRANTY.** For a period of one year after the completion of this Agreement CGD will continue to supply support and fixes as requested by the Client in accordance with the rate schedule set forth in Exhibit A. Except and to the extent otherwise expressly provided herein, there are no other warranties, express or implied, including, but not limited to, any warranties of merchantability or fitness for any particular purpose.

**EXECUTED** as of the date first written above.

**Client:**
Gateway Gaming, LLC,
a South Carolina limited liability company

By: _____
(Signature)

Leslie D. Caldwell  President
(Printed Name & Title)

**CGD:**
Custom Game Design, Inc.,
a Texas corporation

By: _____
David Hampe, President

### *EXHIBIT A*

*Schedule and Cost of Work for System, Games, and Support*

## Schedule

August 2004
- Start of Gaming System ($103,750)

September 2004
- Start Game 1: 8-liner at 95% ($18,200)
- Approval of Game 1: 8-liner at 95% ($18,200)

October  2004
- First milestone for Gaming System ($103,750)
- Start 8-liner 93% numbers ($8,400)
- Start Game 2: alternate graphics 8-liner ($12,000)

November 2004
- Approval of Game 2: alternate graphics 8-liner ($12,000)
- Complete 8-liner 93% numbers ($8,400)

December 2004
- Start of Game 3: 5-liner at 95% ($17,000)
- Approval of Game 3: 5-liner at 95% ($17,000)
- Start 5-liner 93% numbers ($6,000)
- Complete 5-liner 93% numbers (6,000)

January 2005
- Start Game 4: alternate graphics 5-liner ($12,000)
- Approval of Game 2: alternate graphics 5-liner ($12,000)

February 2005
- Gaming System enters beta ($103,750)
- Game 1 enters beta ($18,200)

March 2005
- Gaming System completes beta ($103,750) + ($32,000)
- Game 1 completes beta ($18,200) + ($11,200)
- Game 2 enters beta ($12,000)
- Game 3 enters beta ($17,000)
- Start of Game 5: 9-liner at 95% ($18,600)
- Approval of Game 5: 9-liner at 95% ($18,600)

April 2005
- Game 2 completes beta ($12,000) + ($8,200)
- Game 3 completes beta ($17,000) + ($11,200)
- Game 4 enters beta ($12,000)
- Game 5 enters beta ($18,600)
- Start 9-liner 93% numbers ($9,200)
- Complete 9-liner 93% numbers ($9,200)

May 2005
- Game 4 completes beta ($12,000) + ($8,200)
- Game 5 completes beta ($18,600) + ($11,200)

**Gateway Gaming System**

The Gateway Gaming System will consist of a Central Back Office, Management Terminal, Cashier Terminal, and a Game Terminal. The system will have features comparable to competitive systems in the field. Wide Area progressives, Wide Area Game Play, Card Reader, and Mechanical Slots are not included in this quote.

| | |
|---|---|
| Gaming System | $321,000 |
| Financial Collection Server | $16,000 |
| Max Bet Selectable | $24,000 |
| Multi-Denomination | $20,000 |
| 2 Methods for Single Players | $10,000 |
| Ticket In, Ticket Out | $20,000 |
| 2 LCDs | $4,000 |
| Beta Testing | $32,000 |
| | ------------ |
| **TOTAL** | $447,000 |

Compensation will be paid according to the following schedule:

| | |
|---|---|
| To be paid upon initiation of project: | $103,750 |
| To be paid at first milestone: | $103,750 |
| To be paid at second milestone: | $103,750 |
| To be paid at second milestone: | $135,750 |

The milestones are defined as follows:

First Milestone: Demonstration of game with new graphics and casino engines.

Second Milestone: Start of Beta.

Third Milestone: Completion of Beta testing.

**Games**

| | |
|---|---|
| 8 Liner at 95% | $72,800 |
| 8 Liner 93% Payout | $16,800 |
| 8 Liner Alternate Graphics | $48,000 |
| 5 Liner at 95% | $68,000 |
| 5 Liner 93% Payout | $12,000 |
| 5 Liner Alternate Graphics | $48,000 |
| 9 Liner at 95% | $74,400 |
| 9 Liner 93% Payout | $18,400 |
| Beta Testing – 5 Games | $50,000 |
| | ------------ |
| **TOTAL** | $408,400 |

There are four payments for new game projects and alternative graphics projects. These payments occur at the following milestones: start, game design approval, beta, and release. All other projects have two payments. These payments occur at the following milestones: start and release.

*Support and Ad Hoc Projects*

Support services and ad hoc projects, including but not limited to test programs, device drivers, feature requests, field support, marketing support and manufacturing support will be charged according to the following schedule of rates:

| | |
|---|---|
| Monday – Friday 9AM – 7PM Central Time (Normal Business Hours) | $100.00 / hour |
| Monday – Friday 12AM – 9AM Central Time Monday – Friday 7PM – 12AM Central Time Saturday Sunday | $150.00 / hour |
| On-Site Support | $150.00 / hour |

All support and ad hoc work will be done during normal business hours at the CGD office unless after-hours or on-site support is requested by the Client in advance and expenses related thereto shall be reimbursed in accordance with Section 4 of the Agreement.

Client may have further projects that are not included in the contract, but can be quoted and initiated at a mutually agreed upon price from CGD.

EXHIBIT A-2

# DAVIS RAWLINS, P.C.

May 4, 2007



James M. Griffin, Esq.                                    **VIA CERTIFIED MAIL**
THE LAW OFFICES OF JAMES MIXON GRIFFIN
P.O. Box 999
Columbia, South Carolina, 29202

Craig M. Price, Esq.                                      **VIA CERTIFIED MAIL**
HAMMERLE FINLEY
2220 San Jacinto Blvd., Suite 200
Denton, Texas 76205

      Re:    Cause No. 06-04909-K; *Custom Game Design, Inc. vs. Gateway Gaming, Inc., et al.*

      Re:    NO. 8:06-CV-01649-HMH; *Gateway Gaming, LLC v. Custom Game Design, Inc.*

Dear Jim and Craig:

Enclosed is a fully executed copy of the Settlement Agreement in connection with the above-entitled and numbered cases.

I have signed and enclosed the Agreed Motion for Dismissal With Prejudice and Order granting same for filing in Cause No. 06-04909-K. Craig, please sign and file the motion and enclosed order.

In addition, Jim please file the Joint Stipulation of Dismissal and Order granting same in case No. 8:06-cv-01649 pursuant to paragraph 2 of the settlement agreement.

Sincerely,

*Karen McCloud*

Karen McCloud

cc:    Dave Hampe
      Mason Goldsmith

---

3010 Lyndon B. Johnson Freeway, Suite1200 • Dallas, TX 75234 • Tel 972/919-6155 • Fax 972/919-6195

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among Custom Game Design, Inc. ("CGD") and Gateway Gaming L.L.C. ("Gateway"), Robert Weatherby ("Weatherby"), David Dempsey ("Dempsey"), and Keith Riskey ("Riskey") (collectively, "the Parties") and shall be deemed entered into as of the date of signature of the last party or party representative to sign the Agreement.

## RECITALS

WHEREAS, on May 22, 2006, CGD filed suit against Gateway, Weatherby, Dempsey, and Riskey in a lawsuit captioned *Custom Game Design, Inc. v. Gateway Gaming, Inc., Robert Weatherby, David Dempsey, and Keith Riskey*, Cause No. 06-04909-K, in the 192nd District Court for Dallas County, Texas (the "Texas Action");

WHEREAS, on May 31, 2006, Gateway filed suit against CGD in a lawsuit captioned *Gateway Gaming L.L.C. v. Custom Game Design, Inc.*, Civil Action No. 8:06-cv-01649-HMH, in the United States District Court for the District of South Carolina, Greenville Division (the "South Carolina Action");

WHEREAS, the Parties wish to settle all matters currently in controversy between them without the time, trouble, expense, and uncertainty of further litigation;

WHEREAS, the Parties wish to dismiss with prejudice all claims between them that were or could have been asserted in the Texas Action and South Carolina Action; and

NOW, THEREFORE, in consideration of the foregoing recitals and in consideration of the covenants and other promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## TERMS OF AGREEMENT

1. **Full Settlement.**  The Parties do hereby fully and finally settle all disputes, claims, counterclaims, causes of action that were or could have been asserted as a claim, counterclaim, or defense in the Texas Action and/or South Carolina Action by any of the Parties or that are based on any action or omission occurring between them prior to the effective date of the Agreement.

2. **Dismissal of Actions.**  The Parties agree to dismiss the Texas Action and South Carolina Action with prejudice within seven (7) calendar days after the effective date of the Agreement.  CGD shall file an Agreed Motion to Dismiss With Prejudice and Agreed Order of Dismissal in the form attached as Exhibit A in the 192nd District Court of Dallas County, Texas, in Cause No. 06-04909-K, styled *Custom Game Design, Inc. v. Gateway Gaming, Inc., Robert Weatherby, David Dempsey, and Keith Riskey.*  Gateway shall file a Joint Stipulation of Dismissal with Prejudice and Agreed Order of Dismissal in the form attached as Exhibit B in the United States District Court for the District of South Carolina, Greenville Division, in Civil Action No. 8:06-cv-01649-HMH, styled *Gateway Gaming L.L.C. v. Custom Game Design, Inc.*

3. **Release by Gateway.**  Gateway hereby releases, acquits, and forever discharges and holds harmless Custom Game Design, Inc., its officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and remedies, which have accrued to Gateway, its affiliates, related companies, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising

under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

4. **Release by Weatherby.**   Weatherby hereby releases, acquits, and forever discharges and holds harmless Custom Game Design, Inc., its officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and remedies, which have accrued to Weatherby, his heir, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

5. **Release by Dempsey.** Dempsey hereby releases, acquits, and forever discharges and holds harmless Custom Game Design, Inc., its officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and remedies, which have accrued to Dempsey, his heir, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring

prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

6. **Release by Riskey.** Riskey hereby releases, acquits, and forever discharges and holds harmless Custom Game Design, Inc., its officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and remedies, which have accrued to Riskey, his heir, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

7. **Release by Goliath Software, Inc.** Goliath Software, Inc. ("Goliath") hereby releases, acquits, and forever discharges and holds harmless Custom Game Design, Inc., its officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and

remedies, which have accrued to Gateway, its affiliates, related companies, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

8. **Release by CGD.** CGD hereby releases, acquits, and forever discharges and holds harmless Gateway Gaming, L.L.C., Goliath Software, Inc., Robert Weatherby, David Dempsey, and Keith Riskey, their respective officers, shareholders, members, managers, representatives, agents, employees, successors, assigns, trustees and attorneys, from any and all existing, known and unknown, liability, claims, counterclaims, demands, and causes of action for all existing, known, and unknown damages and remedies, which have accrued to them, their affiliates, related companies, successors, and assigns, based upon, arising out of, or relating to the claims made or that could have been made in the Texas Action and South Carolina Action for conduct occurring prior to the effective date of this Agreement, including but not limited to all claims, demands, and causes of action of any nature, whether in contract or in tort, or arising under or by virtue of any statute or regulation, which are now recognized by law or which may be created or recognized in the future in any manner, including without limitation by statute, regulation, or judicial decision, for past, present, future, known, and unknown losses, damages, or remedies of any kind.

9. **Firehouse.** Custom Game Design, Inc. retains ownership of and all rights to the Firehouse game and numbers. Gateway,    Goliath,    Weatherby,    Dempsey,    and    Riskey

acknowledge that they do not now or since leaving CGD have in their possession any version of the Firehouse numbers finished or not finished.

10. **Gateway Equipment.** CGD agrees to return to Gateway the following seven pieces of equipment and any other equipment that CGD can identify as belonging to Gateway by the date this Agreement is entered:

| 1. | Cashier Terminal | Barcode Reader | Symbol LS2208 |
|----|------------------|----------------|---------------|
| 2. | Game Server | Software | Windows Small Business Server 2003 |
| 3. | Cashier Terminal | Receipt Printer | Epson TM-T88III |
| 4. | Cashier Terminal | Cash Drawer | APG Series 4000 |
| 5. | Game Server | Computer | Dell PowerEdge2600 |
| 6. | Gateway Games Cabinets | | |
| 7. | Multiple power supplies | | |

The Parties agree that Gateway takes the equipment **"AS IS,"** without any warranties, representations, or liabilities of any kind.

11. **Consideration Acknowledged.** The Parties acknowledge that the covenants contained in this Settlement Agreement provide good and sufficient consideration for every promise, duty, release, obligation, and right contained herein.

12. **No Admission of Liability.** The Parties acknowledge that this Agreement is made to avoid further costs and uncertainties of litigation. The Parties understand and agree that the terms of this Agreement are contractual and not mere recitals, that this is a compromise of disputed claims, and that nothing contained herein shall be construed as an admission of any liability whatsoever by or on behalf of CGD, Gateway, Weatherby, Dempsey, or Riskey, all such liability being expressly denied.

13.    **Attorney's Fees.**  The Parties shall bear their own attorney's fees, costs and expenses in connection with the Texas Action and South Carolina Action.

14.    **Independent Judgment.**  The undersigned represent and warrant that they fully understand the terms of this Agreement, that they have discussed it fully with counsel of their choosing, that they have acted on their own independent judgment, and that neither is relying on any representations of the other in executing this Agreement, whether in the form of the existence or absence of a material fact, or otherwise.

15.    **Entirety and Amendments.**  This Agreement with attachments embodies the entire agreement between and among the Parties, and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof, and may be amended, changed or modified only by an instrument in writing executed jointly by the Parties, and supplemented only by documents delivered or to be delivered in accordance with the express terms hereof.

16.    **Further Assurances.**  The Parties agree, represent and warrant that they are the sole and true owners of, and have not previously assigned, transferred or granted or purported to assign, transfer, or grant any of the claims, demand, causes of action, suits, controversies, liabilities or obligations released, assigned or transferred by this Agreement.

17.    **Parties Bound.**  This Agreement shall be binding upon and inure to the benefit of the Parties and all persons released in Paragraphs 3-8 and their heirs, successors and assigns.

18.    **Attorneys' Fees.**  The Parties shall bear their own attorneys' fees, costs and expenses in connection with the Texas Action and the South Carolina Action.  In connection with any motion or other proceedings that may be filed to enforce the terms of this Agreement, however, the prevailing party in connection with such motion or other proceeding shall be entitled to recover its costs, including reasonable and necessary attorneys' fees and expenses.

19.     **Multiple Counterparts.**  This Agreement may be executed in counterparts each of which shall constitute an original.

20.     **Notices.**  All Notices due under this Agreement shall be served by certified mail, return receipt requested to the following addresses:

> Custom Game Design, Inc.
> c/o David Hampe
> 5055 W Park Blvd.
> Suite 550
> Plano, TX 75093
>
> Gateway Gaming, L.L.C.
> c/o Michael Caldwell
> 1243 Piedmont Highway
> Piedmont, South Carolina 29689
>
> Robert Weatherby
> 12240 Henderson Trail
> Celina, Texas 75009
>
> David Dempsey
> 913 Madison Circle
> Lewisville, Texas 75067
>
> Keith Riskey
> 3827 Holland Avenue, #B
> Dallas, Texas 75219

**IN WITNESS WHEREOF**, the Parties have executed this Release on the last day acknowledged below.

Custom Game Design, Inc.

By: _____
*Signature of Authorized Party Representative*

Printed Name: David Hampe
Title:   President
Date: _____4/25/07_____

Goliath Software, Inc.

By: _____

*Signature of Authorized Party Representative*

Printed Name:  Bob Mosely

Title:  President

Date: ___4/24/07_____

Gateway Gaming L.L.C.

By: _Michael Caldwell_
*Signature of Authorized Party Representative*

Printed Name: Michael Caldwell

Title: Chief Executive Officer

Date: 3/28/07

By: _____
    Robert Weatherby

Date: _____

By: _____
    David Dempsey

Date: _____

By: _____
    Keith Riskey

Date: _____

APPROVED AS TO FORM AND SUBSTANCE:

_____
James E. Davis
DAVIS RAWLINS P.C.
3010 LBJ Freeway
Suite 1200
Dallas, TX 75234

Attorney for Custom Game Design, Inc. in Texas Action

Gateway Gaming L.L.C.

By: _____
Signature of Authorized Party Representative

Printed Name:  Michael Caldwell

Title:  Chief Executive Officer

Date: _3/28/07_____


By: _____
Robert Weatherby

Date: _04/10/07_____


By: _____
David Dempsey

Date: _4-17-07_____


By: _____
Keith Riskey

Date: _____


APPROVED AS TO FORM AND SUBSTANCE:


_____
James E. Davis
DAVIS RAWLINS P.C.
3010 LBJ Freeway
Suite 1200
Dallas, TX 75234

Attorney for Custom Game Design, Inc. in Texas Action

Gateway Gaming L.L.C.

By: _Michael Caldwell_____
Signature of Authorized Party Representative

Printed Name:  Michael Caldwell

Title:  Chief Executive Officer

Date: _3/28/07_____



By: _____
       Robert Weatherby

Date: _____



By: _____
       David Dempsey

Date: _____



By: _Keith Riskey_____
       Keith Riskey

Date: _4/12/07_____



APPROVED AS TO FORM AND SUBSTANCE:



_____
James E. Davis
DAVIS RAWLINS P.C.
3010 LBJ Freeway
Suite 1200
Dallas, TX 75234

Attorney for Custom Game Design, Inc. in Texas Action

Gateway Gaming L.L.C.

By:  _____
*Signature of Authorized Party Representative*

Printed Name:  Michael Caldwell

Title:  Chief Executive Officer

Date:  _____


By:  _____
Robert Weatherby

Date:  _____


By:  _____
David Dempsey

Date:  _____


By:  _____
Keith Riskey

Date:  _____


APPROVED AS TO FORM AND SUBSTANCE:

James E. Davis
DAVIS RAWLINS P.C.
3010 LBJ Freeway
Suite 1200
Dallas, TX 75234

Attorney for Custom Game Design, Inc. in Texas Action

Mason A. Goldsmith, Jr.
ELMORE & WALL, P.A.
301 North Main Street, Suite 2000
Greenville, South Carolina 29601

Attorney for Custom Game Design, Inc. in South Carolina Action


Richard A. Harpootlian
P.O. Box 1090
Columbia, South Carolina, 29202

Attorney for Gateway Gaming, L.L.C. in South Carolina Action


James M. Griffin
THE LAW OFFICES OF JAMES MIXON GRIFFIN
P.O. Box 999
Columbia, South Carolina, 29202

Attorney for Gateway Gaming, L.L.C. in South Carolina Action


Virgina L. Hammerle
Craig M. Price
HAMMERLE FINLEY
2220 San Jacinto Blvd., Suite 200
Denton, Texas 76205

Attorneys for Gateway Gaming, L.L.C., Robert Weatherby,
David Dempsey, and Keith Riskey in Texas Action

Mason A. Goldsmith, Jr.
ELMORE & WALL, P.A.
301 North Main Street, Suite 2000
Greenville, South Carolina 29601

Attorney for Custom Game Design, Inc. in South Carolina Action

Richard A. Harpootlian
P.O. Box 1090
Columbia, South Carolina, 29202

Attorney for Gateway Gaming, L.L.C. in South Carolina Action

James M. Griffin
THE LAW OFFICES OF JAMES MIXON GRIFFIN
P.O. Box 999
Columbia, South Carolina, 29202

Attorney for Gateway Gaming, L.L.C. in South Carolina Action

Virgina L. Hammerle
Craig M. Price
HAMMERLE FINLEY
2220 San Jacinto Blvd., Suite 200
Denton, Texas 76205

Attorneys for Gateway Gaming, L.L.C., Robert Weatherby,
David Dempsey, and Keith Riskey in Texas Action

## CAUSE NO. 06-04909-K

| | | |
|---|---|---|
| CUSTOM GAME DESIGN, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| GATEWAY GAMING, INC., ROBERT | § | |
| WEATHERBY, DAVID DEMPSEY, AND | § | |
| KEITH RISKEY | § | 192ND JUDICIAL DISTRICT |

---

### AGREED MOTION FOR DISMISSAL WITH PREJUDICE

---

Plaintiff Custom Game Design, Inc. ("CGD") and Defendants Gateway Gaming, L.L.C., Robert Weatherby, David Dempsey, and Keith Riskey (collectively, "Defendants") announce to the Court that the parties have resolved all matters between them and request that this Court dismiss the claims asserted in this matter in their entirety with prejudice.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff and Defendants request that the Court enter an Order dismissing all causes of action with prejudice to the refiling of same and that all costs are to be paid by the parties incurring same.

Dated: May 4, 2007

---

AGREED MOTION FOR DISMISSAL WITH PREJUDICE                                     PAGE 1



Respectfully submitted:


**JAMES E. DAVIS**
State Bar No. 05504200
**KAREN D. MCCLOUD**
State Bar No. 24013125
**DAVIS RAWLINS, PC**
3010 LBJ Freeway, Suite 1200
Dallas, Texas 75234
(972) 919-6155 (Telephone)
(972) 919-6195 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**


**VIRGINA N. HAMMERLE**
State Bar No. 14907600
**CRAIG M. PRICE**
State Bar No. 16284170
**HAMMERLE FINLEY**
220 San Jacinto Blvd., Suite 200
Denton, Texas 76205
(940) 383-9300 (Telephone)
(972) 434-4500 (Metro)
(940)383-8000 (Fax)

**ATTORNEYS FOR DEFENDANTS**

CAUSE NO. 06-04909-K

| CUSTOM GAME DESIGN, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| GATEWAY GAMING, INC., ROBERT | § | |
| WEATHERBY, DAVID DEMPSEY, AND | § | |
| KEITH RISKEY | § | 192ND JUDICIAL DISTRICT |

## AGREED ORDER OF DISMISSAL WITH PREJUDICE

On this day the Court considered the Agreed Motion for Dismissal in the above-styled cause of action.  In the Agreed Motion for Dismissal, Plaintiff and Defendants announced that the matters in controversy in this action between them have been resolved and settlement. Accordingly, Plaintiff and Defendants move that the causes of action and claims asserted in the above-styled and numbered cause of action be dismissed with prejudice as to the refilling of same.

IT IS HEREBY ORDERED that all claims between the parties in the above-styled cause of action be, and hereby are, dismissed with prejudice as to the refiling in any form.

All costs are to be paid by the party incurring same.

SO ORDERED on _____, 2007.

_____

Judge Craig Smith

---

AGREED ORDER OF DISMISSAL WITH PREJUDICE                                    PAGE 1

Agreed as to form and entry:


_____
Karen McCloud
Attorney for Plaintiff



_____
Craig Price
Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| GATEWAY GAMING, L.L.C. | § | NO. 8:06-CV-01649-HMH |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CUSTOM GAME DESIGN, INC. | § | |
| | § | |
| Defendant. | § | |

---

## JOINT STIPULATION OF DISMISSAL

---

Plaintiff Gateway Gaming, L.L.C. and Defendant Custom Game Design, Inc. file this stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

The parties have resolved all matters between them and therefore, stipulate to the dismissal of their respective claims and counterclaims against one another.

This dismissal is with prejudice.

All costs are to be paid by the party incurring same.

WHEREFORE, PREMISES CONSIDERED, Plaintiff and Defendant request that the Court enter an Order dismissing all claims and counterclaims asserted in this lawsuit with prejudice to the refiling of same.



EXHIBIT
B

Respectfully submitted,

By: *s/ Richard A. Harpootlian*
    Richard A. Harpootlian
    Fed. I.D. No. 1730
    P.O.Box 1090
    Columbia, South Carolina 29202
    (803) 252-4848

By: *s/ James M. Griffin*
    James M. Griffin
    Fed. I.D. No. 1053
    P.O.Box 1090
    Columbia, South Carolina 29202
    (803) 744-0800

**ATTORNEYS FOR PLAINTIFF**

By: *s/Mason A. Goldsmith, Jr.*
    Mason A. Goldsmith, Jr.
    Fed. I.D. No. 7029
    ELMORE & WALL, P.A.
    301 North Main Street, Suite 2000
    Greenville, South Carolina 29601
    Telephone: (864) 255-9500
    Fax: (864) 255-9505

**ATTORNEY FOR DEFENDANT**

**Of Counsel for Defendant:**
JAMES E. DAVIS
Texas State Bar No. 05504200
**DAVIS RAWLINS, PC**
3010 LBJ Freeway, Suite 1200
Dallas, Texas  75243
(972) 919-6155 – Telephone
(972) 919-6195 – Facsimile

Greenville, South Carolina
**JOINT STIPULATION OF DISMISSAL**                                    **PAGE 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| GATEWAY GAMING, L.L.C. | § | NO. 8:06-CV-01649-HMH |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| CUSTOM GAME DESIGN, INC. | § | |
| | § | |
| Defendant. | § | |

---

### AGREED ORDER OF DISMISSAL

---

Came on for consideration Plaintiff and Defendant's Joint Stipulation of Dismissal.

IT IS HEREBY ORDERED that all claims and counterclaims between the parties in the

above-styled civil action be, and hereby are, dismissed with prejudice as to the refiling in any

form.

All costs are to be paid by the party incurring same.

SO ORDERED on _____, 2007.


_____

Henry M. Herlong, Jr.
U.S. District Judge


AGREED ORDER OF DISMISSAL                                                    PAGE 1

AGREED:


/s/ *Richard A. Harpootlian*
Richard A. Harpootlian
Attorney for Gateway Gaming, L.L.C.



/s/ *James Griffin*
James Griffin
Attorney for Gateway Gaming, L.L.C.


/s/ *Mason A. Goldsmith, Jr.*
Mason A. Goldsmith, Jr.
Attorney for Custom Game Design, Inc.

# EXHIBIT A-3

**Justin B. Kaplan, Esq.**
Partner
*jkaplan@DFKfirm.com*



May 13, 2020

**VIA FedEx**
Epic Tech, LLC
c/o Paracorp Incorporated
279 W. Crogan St.
Lawrenceville, GA 30046

> **RE:** **_Unauthorized use of Legacy System Software_**

To Whom it May Concern:

This law firm and Brodsky Fotiu-Wojtowicz, PLLC, have been retained by Arno Resources, LLC, to pursue claims against Epic Tech, LLC, and others for their unauthorized use of certain software that our client's predecessor in interest, Custom Game Design, Inc., licensed to Gateway Gaming, Inc. Epic Tech and its putative co-defendants have profited greatly from such unauthorized use. We enclose a copy of the draft Complaint for your review.

While our client intends to pursue all remedies at law and equity against all parties named in the Complaint—as well as others it may learn of through discovery such as the ultimate end-users—our client has authorized us to discuss potential settlement possibilities with all parties before filing suit in an effort to resolve this matter pre-suit. To that end, we request that you have Epic Tech's attorneys contact us no later than May 22, 2020, should it wish to discuss a potential pre-suit settlement.

Very Truly Yours,

/s/    *Justin B. Kaplan*
Justin B. Kaplan, Esq.

Cc: Benjamin Brodsky, Esq.

Enc.

---

Miami| 777 Brickell Avenue • Suite 630 • Miami, FL 33131 • (t) 305.569.9800 • (f) 866.569.0666
New York| 845 Third Avenue • 6th Floor • New York, NY 10022 • (t) 212.734.3330 • (f) 866.734.4331

*www.Dfkfirm.com*

# EXHIBIT B

## SOFTWARE ASSIGNMENT AGREEMENT

THIS SOFTWARE ASSIGNMENT AGREEMENT (this "Agreement"), dated as of February 28, 2017, is entered into by and between Arno Resources, LLC, a Texas limited liability company ("Arno"), and Custom Game Design, Inc. a Texas corporation ("CGD").

## RECITAL

WHEREAS, on the terms and subject to the conditions set forth in this Agreement, CGD desires to assign to Arno all of GGD's right, title and interest in certain specified intellectual property, except those rights which are expressly reserved by CGD as provided in Section 1.02 herein.

NOW, THEREFORE, in consideration of the premises and mutual covenants herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE 1
## ASSIGNMENT OF INTELLECTUAL PROPERTY

Section 1.01    Assignment of Intellectual Property.   CGD hereby grants, conveys, and assigns to Arno all rights, title and interest to the intellectual property described in the attached Exhibit A (collectively, the "Intellectual Property"). CGD also hereby grants, conveys, and assigns all rights to any claims for misappropriation, violation, infringement or other wrongful act with respect to the Intellectual Property, regardless of whether such misappropriation, violation, infringement or other wrongful act occurred before or after the date of this Agreement (collectively, the "Claims").

Section 1.02    Reservation of License.   CGD reserves for itself a perpetual and non-exclusive right and license to use (including, without limitation, the right to sublicense, copy, and improve) the Intellectual Property solely as an integrated component of its own fully functional gaming systems.  CGD may license the use of the Intellectual Property to third parties solely as an integrated component of CGD's own fully functional gaming systems and only as necessary to continue its existing business operations of licensing fully functional gaming systems.  In no event and under no circumstance shall CGD have the right to license, assign, or otherwise convey the use of, or any right to, the Intellectual Property (i) to any individual or entity that directly or indirectly, owns, licenses, develops, or otherwise utilizes software known as the "Legacy System" or any component or derivative of the Legacy System, (ii) to Epic Tech, LLC, its predecessors, successors, affiliates, subsidiaries, agents, owners, members, employees including, but not limited to, Eric Nordin, Bob Mosely, Red Rock Investments LLC and Gateway Gaming LLC, (iii) to any entity directly or indirectly owned, controlled or operated by Epic Tech, LLC, its predecessors, successors, affiliates, subsidiaries, agents, owners, members, employees including, but not limited to, Eric Nordin, Bob Mosely, Red Rock Investments LLC, and Gateway Gaming LLC, or (iv) for use in or as a component of the "Legacy System" or any component or derivative of the Legacy System.

Section 1.03   Payment to CGD.   In exchange for the foregoing assignments, as well as other good and valuable consideration that is hereby acknowledged, Arno hereby agrees to pay to CGC the total sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) within 4 months following the execution of this Agreement.

Section 1.04   Expenses of Enforcement.   With the assignment of the Intellectual Property to Arno, Arno assumes the obligation, at is discretion, of defending and enforcing the Intellectual Property against infringement.   Arno will, at its sole expense, bear all costs of such enforcement, including, without limitation, litigation costs and attorney fees.

## ARTICLE 2
## REPRESENTATIONS, WARRANTIES, AND GUARANTIES

Section 2.01   Representations, Warranties, and Guaranties.   By and through his signature below, David Hampe, an individual resident of the State of Texas ("Hampe"), and the sole owner, member and principal of CGD, is executing this Agreement in his individual capacity and on behalf of CGD, and hereby fully, unconditionally and irrevocably represents, warrants, and guarantees on his behalf and that of CGD to Arno that CGD is the sole owner of all of the Intellectual Property identified in Exhibit A and that neither he personally, nor any other entity that he is associated with owns any intellectual property rights associated therewith.   Hampe also hereby fully, unconditionally and irrevocably represents, warrants, and guarantees on his behalf and that of CGD that CGD is the sole owner of all the Claims and that no Claim has been assigned, conveyed or sold, in part or in its entirety, to any other person.

Section 2.02   Reliance.   The parties agree that Arno is relying on the representations, warranties, and guarantees set forth in Section 2.01 in entering into this Agreement.

## ARTICLE 3
## MISCELLANEOUS

Section 3.01   Nature of Relationship.   Nothing herein shall be construed to place the parties in a relationship of partners or joint venturers and this Agreement does not make either party the agent or legal representative of the other for any purpose whatsoever.   Neither party shall be responsible for any act or omission of the other or any employee of the other.

Section 3.02   Waiver and Amendment.   No amendment to this Agreement shall be effective unless it has been executed in writing by each of the parties, and no waiver of any provision of this Agreement shall be effective unless it has been executed in writing by the party giving such waiver.   Neither the failure of any party hereto to exercise any right, power or remedy provided under this Agreement where otherwise available in respect hereof at Law, in equity, by statute or otherwise, or to insist upon compliance by the other party with its obligations hereunder, nor any custom or practice of the parties at variance with the terms hereof, shall constitute a waiver by such party of its right to exercise any such right, power or remedy or to demand such compliance.

Section 3.03   Notices.  All notices, demands and requests required or permitted to be given under this Agreement shall be (a) in writing, (b) sent by commercial delivery service or certified mail, return receipt requested, (c) deemed to have been given on the date set forth in the records of the delivery service or on the return receipt, and (d) addressed as follows: If to CGD:

> Custom Game Design, Inc.
> Attn:  David Hampe
> 811 E Plano Pkwy #120, Plano, TX 75074
>
> If to Arno:
>
> Arno Resources, LLC.
> ATTN: Arno Company, LLC, Manager
> P.O. Box 342141
> Austin, TX 78734

Section 3.04   Descriptive Headings; Interpretation.  The descriptive headings herein are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Agreement.  As used in this Agreement, the terms "include," "includes" and "including" are deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of like import.  Words of one gender shall be held to include the other gender as the context requires.

Section 3.05   Entire Agreement.  This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all other prior discussions and agreements with respect to the subject matter hereof.

Section 3.06   Governing Law.  This Agreement shall be governed, construed and enforced in accordance with the internal Laws of the State of Texas, without regard to any conflict of Law provisions thereof.

Section 3.07   Severability.  If any term or other provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of Law, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect.

Section 3.08   Counterparts.  This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one agreement.  This Agreement shall become effective when one or more counterparts have been signed by the parties hereto and delivered to the other parties, it being understood that the parties need not sign the same counterpart.  Facsimile signatures or signatures received as a portable document format (PDF) attachment to electronic mail shall be treated as original signatures for all purposes hereunder.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**ARNO RESOURCES, LLC**                                    **CGD:**

By: Arno Company, LLC                                      CUSTOM GAME DESIGN, INC.

_____                         _____
Richard Schappel, Manager                                 David Hampe
                                                          Individually and as President of CGD

## Exhibit A

Non-Exhaustive List of Purchased Intellectual Property

1.    All trademarks, goodwill associated with the trademarks, trade secrets, copyrights, source code, object code, and other intellectual property that resulted from or are associated with the execution or performance of the August 13, 2004 Development Agreement between Gateway Gaming, LLC and CGD[1], aside from those that Gateway Gaming, LLC may own pursuant to section 8 of the Development Agreement.

2.    All of the intellectual property and associated rights that were licensed to Gateway Gaming, LLC pursuant to section 8 of the August 13, 2004 Development Agreement between Gateway Gaming, LLC and CGD.

---

[1] The Development Agreement is attached hereto as Exhibit A-1.